UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM WEITSMAN; UPSTATE SHREDDING, LLC, a New York limited liability company; WEITSMAN SHREDDING, LLC, a New York limited liability company; and WEITSMAN RECYCLING, LLC, a New York limited liability company,<br><br>                    Plaintiffs,<br><br>v.<br><br>ROBERT ARTHUR LEVESQUE, III,<br><br>                    Defendant. | Case No.: 19-CV-461 JLS (AHG)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT, (2) DENYING WITHOUT PREJUDICE PLAINTIFFS' REQUEST FOR A PERMANENT INJUNCTION, AND (3) DENYING AS MOOT PLAINTIFFS' REQUEST FOR AN IN-PERSON STATUS CONFERENCE**<br><br>(ECF Nos. 89, 95, 96) |

      Presently before the Court are Plaintiffs Adam Weitsman; Upstate Shredding, LLC; Weitsman Shredding, LLC; and Weitsman Recycling, LLC's Motion for Default Judgment and Injunction ("Mot.," ECF No. 89), Supplemental Brief in Support of Motion ("1st Supp.," ECF No. 90), Second Supplemental Brief in Support of Motion ("2d Supp.," ECF No. 95), and Request for In-Person Status Conference Regarding Motion ("Req.," ECF No. 96). Having carefully reviewed Plaintiffs' pleadings, briefs, supporting evidence, and the law and having weighed the relevant factors, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion (ECF Nos. 89, 95), **DENIES WITHOUT**

**PREJUDICE** Plaintiffs' request for permanent injunctive relief (ECF Nos. 89, 94, 95), and **DENIES AS MOOT** Plaintiffs' Request for a status conference, as follows.

BACKGROUND

## I.    Plaintiffs' Allegations and Evidence

Plaintiff Weitsman is the founder and principal owner of corporate Plaintiffs Upstate Shredding, Weitsman Shredding, and Weitsman Recycling, which are successful scrap metal and recycling businesses in the State of New York. *See* First Am. Compl. ("FAC," ECF No. 85) ¶¶ 1–4, 10. "Upstate Shredding has 18 locations, and Weitsman Shredding and/or Weitsman Recycling [have] approximately 500 employees to support Upstate Shredding's recycling operations." *Id.* ¶ 11. "Because 'Upstate Shredding' has become a well-established brand in the recycling industry, people often refer to 'Upstate Shredding' when discussing any of Weitsman's business entities, including Weitsman Shredding and Weitsman Recycling." *Id.* ¶ 10.

In November 2011, Weitsman Shredding hired Defendant as a scrap metal inspector in Owego, New York. *Id.* ¶ 12. In March 2014, Defendant "began exhibiting bizarre, erratic, and abnormal behavior during the course of his employment," including "wearing a satanic mask at the office during work hours[] and making racially motivated and derogatory remarks to and/or about Upstate Shredding customers." *Id.* ¶ 13. Consequently, Plaintiffs terminated Defendant in March 2014. *Id.* ¶ 14. At Defendant's request, however, Mr. Weitsman provided Defendant a second chance and rehired him. *See id.* But because Defendant "continued to engage in erratic and bizarre behavior," Plaintiffs again terminated Defendant in December 2014. *Id.* Defendant then moved to Clayton, North Carolina, and, shortly thereafter, to Ramona, California. *See id.* ¶¶ 5, 15.

After his termination and move to North Carolina, Defendant began to publish defamatory statements regarding Plaintiffs on the Internet. *See id.* ¶ 16. "Among other things, [Defendant] has falsely accused Plaintiffs of murder, conspiracy to commit murder, and conspiring to dispose of a missing person (Michele Harris) at the Upstate Shredding recycling plant." *Id.* ¶ 16 & n.1 (footnote omitted).

For example, "[u]nder the user name 'robertlev100[,' Defendant] published at least four YouTube videos about Plaintiffs, all of which falsely identify Plaintiffs as being murderers, co-conspirators to commit murder, accomplices to murder, and otherwise responsible for the disappearance of Ms. Harris." *Id.* ¶ 17. Defendant "also owns and operates the Instagram account bearing the user name 'scrapkingslayer[,'] which he uses to promote his Facebook page containing substantial false and defamatory statements about Plaintiffs." *Id.* ¶ 29. Finally, Defendant owns multiple Twitter accounts, including "Sandbarfight," "VidaliaSBF," and "TheScrapKingSlayer," which he has used to publish hundreds of false and defamatory statements over many years. *See id.* ¶¶ 20–21; *see also id.* Ex. A; Decl. of Raeesabbas Mohamed ("Mohamed Decl.," ECF No. 89-2) ¶ 12 & Ex. 3.

Defendant's "defamatory Twitter posts include images of Upstate Shredding, Mr. Weitsman, and his family," FAC ¶ 21, and, among other things, "falsely accuse[] Plaintiffs of accepting envelopes full of cash from Calvin Harris in exchange for agreeing to dispose of Michele Harris's body," *id.* ¶ 23; *see also id.* ¶ 24; raping a child, *see id.* ¶ 28(a); *see also id.* Ex. E; laundering money for "El Chapo," *see id.* ¶ 28(b); *see also id.* Ex. F; killing "100's, if not thousands[,] through the heroin epidemic and just straight up murder," *see id.* ¶ 28(c); *see also id.* Ex. G; and "conspir[ing] . . . to wiretap [Defendant's] phone calls and . . . transmit[ing] a death threat to a witness that was involved in [Defendant's] case." *See id.* ¶ 28(d); *see also id.* Ex. H. Defendant also has posted on Twitter his own research regarding defamation and defamation per se, *see id.* ¶ 25; *see also id.* Ex. B, and has accused third parties of defamation for allegedly posting false information about him. *See id.* ¶ 25; *see also id.* Ex. C.

On "April 17, 2017, Plaintiffs' counsel demanded that [Defendant] refrain from defaming Plaintiffs, and that he remove all of the defamatory statements he [has] published on the Internet." *Id.* ¶ 26. Defendant "mocked Plaintiffs' demand on Twitter, refused to remove any defamatory statements, and continued" to post defamatory statements. *See id.*; *see also id.* Ex. D.

Defendant's defamatory statements have "harmed the corporate Plaintiffs as well as Weitsman himself." *Id.* ¶ 27. Mr. "Weitsman has suffered and will continue to suffer humiliation, extreme emotional distress, anxiety, depression, stomach aches, headaches, muscle pain, lack of sleep, lack of a desire to eat, emotional pain and suffering, anguish, and loss of self-esteem." *Id.* ¶ 66. Further, "[c]urrent and prospective customers, employees, and other third parties have . . . seen [Defendant]'s YouTube Defamation and Twitter Defamation." *Id.* ¶ 27. "As a result . . ., Plaintiffs have sustained, and will continue to sustain, harm and injury, including, but not limited to, damage to reputation[;] loss of revenues, profits, goodwill, and business relations with existing and future business prospects[;] and loss of competitive business advantage, opportunity, and/or expectancy." *Id.* ¶¶ 37, 50, 59.

## II. Procedural Background

Plaintiffs Weitsman and Upstate Shredding filed this action for damages and preliminary and permanent injunctive relief in the United States District Court for the Northern District of New York on July 5, 2017, alleging causes of action for defamation and defamation per se, business disparagement/trade libel, tortious interference, and intentional infliction of emotional distress. *See generally* ECF No. 1. Following United States Magistrate Judge David E. Peebles' authorization, *see* ECF No. 10, Plaintiffs effected service of their initial complaint by electronic mail on October 2, 2017. *See* ECF No. 12. Plaintiffs requested entry of default on October 26, 2017, *see* ECF No. 17, which the Clerk entered on November 6, 2017. *See* ECF No. 23. On December 6, 2017, Plaintiffs moved for default judgment, *see* ECF No. 25, which Defendant opposed. *See* ECF No. 27.

On April 25, 2018, United States District Judge Mae A. D'Agostino granted in part Plaintiffs' motion for default judgment as to liability for their defamation claims and entered an injunction enjoining Defendant from making certain false and defamatory statements and requiring Defendant to remove all defamatory statements from all websites, forums, blogs, lists, social media accounts, and any other forum of mass communication. *See* ECF No. 34 at 16–17. Judge D'Agostino then held a hearing regarding Plaintiffs'

damages on June 1, 2018. *See* ECF No. 41. While Judge D'Agostino's decision regarding Plaintiffs' damages was pending, Plaintiffs filed two motions for contempt orders. *See* ECF Nos. 43, 46.

On August 27, 2018, Judge D'Agostino *sua sponte* ordered Plaintiffs to show cause why this action should not be dismissed or transferred for lack of personal jurisdiction over Defendant, a resident of California. *See* ECF No. 54. On January 11, 2019, Judge D'Agostino concluded that New York lacked personal jurisdiction over Defendant, vacated her April 25, 2018 Order, and transferred this action to this District pursuant to 28 U.S.C. § 1406(a). *See generally* ECF No. 65.

Following the transfer on March 11, 2019, *see* ECF No. 70, this Court ordered the Parties to file a joint status report. *See* ECF No. 73. The Parties filed separate status reports on March 25, 2019. *See* ECF Nos. 74, 76. The Court then ordered Defendant to respond to Plaintiffs' original complaint on or before April 16, 2019. *See* ECF No. 77.

On April 17, 2019, Defendant filed an answer, *see* ECF No. 83, which Plaintiffs moved to strike. *See* ECF No. 84. Concurrently with their motion to strike, Plaintiffs filed the operative First Amended Complaint, alleging the same causes of action as their initial complaint but adding two new Plaintiffs, Weitsman Shredding and Weitsman Recycling. *See generally* ECF No. 85. Plaintiffs served the First Amended Complaint by mailing a copy via First-Class Mail to Defendant's address in Ramona, California. *See id.* at 17 (per CM/ECF).

On June 7, 2019, Plaintiffs requested that the Clerk of the Court enter default as to Defendant, *see* ECF No. 86, and the Clerk entered default on June 7, 2019. *See* ECF No. 87. The Court denied as moot Plaintiffs' motion to strike, *see* ECF No. 88, after which Plaintiffs filed the instant, unopposed Motion. *See generally* ECF No. 89. Plaintiffs filed supplemental briefs on August 22, 2019, and January 13, 2020. *See* ECF Nos. 90, 95.

## III.   Subsequent Factual Developments

On September 18, 2018, Vestal Town Court Judge Joseph B. Meagher issued a temporary order of protection, ordering Defendant to stay away from Mr. Weitsman and

his family, as well as their home(s), school(s), business(es), and place(s) of employment, through March 18, 2019.  *See* Decl. of Catherine Johnson ("Johnson Decl.," ECF No. 90-1) Ex. 7, ECF No. 90-8, at 4 (per CM/ECF pagination).

On August 5, 2019, a felony complaint was filed against Defendant for criminal contempt of the temporary order of protection.  *See id.* at 3.  The criminal complaint alleged that, "[o]n . . . February 1, 2019, . . . the defendant posted a photo to his own Facebook account that depicts the text of 'Scrap King Slayer[,'] clearly targeting Adam Weitsman . . . [and] placing Adam Weitsman in fear for his life, which is in direct violation of [the] temporary order of protection."  *Id.*  Judge Meagher issued an arrest warrant on August 13, 2019.  *See id.* at 2.  On August 20, 2019, Judge Meagher issued a second temporary order of protection expiring February 20, 2020, *see* Supp. Decl. of Catherine Johnson ("Supp. Johnson Decl.," ECF No. 95-1) Ex. 3, ECF No. 95-4, and on September 10, 2019, the District Attorney for Broome County issued a Notice of Grant Jury Proceeding to inform Defendant that a grand jury would convene regarding his criminal charge on October 2, 2019.  *See* Supp. Johnson Decl. Ex. 4, ECF No. 95-5.

On January 12, 2020, Defendant posted an alarming statement on his Facebook profile:

> I think I will return to New York in about a month and a half.
> I'm convinced that the only way to get justice is to take the law
> into my own hands.  If you've read my last few posts, you might
> understand why.

Supp. Johnson Decl. Ex. 1, ECF No. 95-2.  Defendant's "last few posts" on Facebook contained "twenty[-]five different statements about Plaintiffs, falsely accusing them of perpetuating or directly being involved with criminal activities in Upstate New York, including sexual assault on Syracuse University's campus, selling drugs and steroids, and 'being involved in every type of low life crime that you [c]an imagine.'"  2d Supp. at 2–3; *see also* Supp. Johnson Decl. Ex. 2, ECF No. 95-3.  Defendant's indication that he would "return to New York in about a month and a half" coincides with the expiration of the second temporary protection order.  *See* 2d Supp. at 3; *compare* Supp. Johnson Decl. Ex.

1, *with* Supp. Johnson Decl. Ex. 3.  Defendant also has posted on Facebook that he has been able to obtain "around 60 to 70 guns, mostly handguns from a gun shop in Rochester." *See* 2d Supp. at 3; *see also* John Decl. Ex. 10, ECF No. 90-11.

To apprise the Court of these developments, Plaintiffs filed a Supplemental Brief on August 22, 2019, *see generally* ECF No. 90, and a Second Supplemental Brief on January 13, 2020.  *See generally* ECF No. 95.  Plaintiffs urge that "[t]he totality of circumstances, including, in particular, Defendant's recent threat, warrant immediate attention and the severest level of judicial consequences."  2d Supp. at 4.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a court to enter default judgment upon a party's application.  Although default judgments are ordinarily disfavored, a court may grant or deny a motion for default judgment at its discretion.  *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (citing *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)).

The Ninth Circuit has set out seven factors, known as the *Eitel* factors, that a court may consider when exercising its discretion as to whether or not to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

When weighing these factors, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *see also* Fed. R. Civ. P. 8(b)(6).  To prove damages, a plaintiff may submit declarations, or the Court may hold an evidentiary hearing.  *See Affinity Grp., Inc. v. Balser Wealth Mgmt., LLC*, No. 05CV1555 WQH (LSP),

2007 WL 1111239, at *1 (S.D. Cal. Apr. 10, 2007); *see also Taylor Made Golf Co. v. Carsten Sports*, 175 F.R.D. 658, 661 (S.D. Cal. 1997) ("In assessing damages, the court must review facts of record, requesting more information if necessary, to establish the amount to which plaintiff is lawfully entitled upon judgment by default.").

## ANALYSIS

### I. Jurisdiction

#### A. *Subject-Matter Jurisdiction*

To enter default judgment, the Court must first determine that it has subject-matter jurisdiction. *See Twitch Interactive, Inc. v. Johnston*, No. 16-cv-03404-BLF, 2019 WL 3387977, at *3 (N.D. Cal. July 26, 2019). Here, the Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000. Plaintiffs are citizens of New York, *see* FAC ¶¶ 1–4, while Defendant is a citizen of California. *See id.* ¶ 5. Plaintiffs allege that "the amount in controversy in this case exceeds the sum or value of $75,000, exclusive of interest and costs," *id.* ¶ 7, and seeks damages for "damage to reputation[;] loss of revenues, profits, goodwill[,] and business relations with existing and future business prospects[;] . . . loss of competitive business advantage, opportunity, and/or expectancy[;]" and "humiliation, extreme emotional distress, anxiety, depression, stomach aches, headaches, muscle pain, lack of sleep, lack of a desire to eat, emotional pain and suffering, anguish, and loss of self-esteem," *id.* ¶¶ 37, 50, 59, 66, as well as punitive damages. *Id.* ¶¶ 42, 52, 62, 68. In subsequent filings, Plaintiffs have claimed damages in excess of $200,000. *See* ECF No. 83 ¶ 5. The Court therefore concludes that it has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

#### B. *Personal Jurisdiction*

The Court also must have personal jurisdiction over the defendant, or else entry of default judgment is void. *Veeck v. Commodity Enters., Inc.*, 487 F.2d 423, 426 (9th Cir. 1973). The burden is on the plaintiff to show that personal jurisdiction exists. *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984).

### 1. Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l., Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "Rule 4 of the Federal Rules of Civil Procedure governs the commencement of an action and the service of process." *Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 999 (9th Cir. 2007). "Rule 5, in turn, governs service of 'every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants,'" *id.* (quoting Fed. R. Civ. P. 5(a)), including amended complaints so long as the party is not "'in default for failure to appear *and* the 'pleadings [do not] assert[] new or additional claims for relief.'" *Id.* (second alteration in original) (emphasis in original) (quoting Fed. R. Civ. P. 5(a)). Rule 5 "provides that such pleadings can be served by various means, including by ' . . . [m]ailing a copy to the last known address of the person served.'" *Id.* (quoting Fed. R. Civ. P. 5(b)).

In this case, Plaintiffs requested permission from Magistrate Judge Peebles of the Northern District of New York to serve Defendant "by email or other alternative means." *See* ECF No. 9. Magistrate Judge Peebles granted Plaintiffs' request on October 2, 2017, ordering that "[t]he e-mail service, in combination with the 'drop service' effectuated on September 21, 2017, shall be deemed good and sufficient service upon sending of the summons and complaint by e-mail." *See* ECF No. 10. The same day, Plaintiffs filed a certificate of service demonstrating that Plaintiffs' counsel had emailed the summons and original complaint to Defendant. *See* ECF No. 12.

Following transfer of the action to this District, the Court ordered Defendant to respond to Plaintiffs' original complaint on or before April 16, 2019. *See* ECF No. 77. Although Defendant timely answered Plaintiffs' original complaint, *see* ECF No. 83, Plaintiffs timely filed the operative First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) on May 9, 2019, *see* ECF No. 85, which again sought damages and injunctive relief for the same four causes of action alleged in the original complaint but added two additional corporate Plaintiffs. *Compare* ECF No. 1, *with* ECF No. 85.

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiffs filed the First Amended Complaint on May 9, 2019, *see generally* ECF No. 85, serving it by U.S. mail that same day. *See id.* at 17 (per CM/ECF). Defendant, however, failed to respond within fourteen days as required by Federal Rule of Civil Procedure 15(a)(3).

The Court concludes that Rule 5, rather than Rule 4, governs service of the First Amended Complaint and that Plaintiffs properly served Defendant pursuant to Rule 5. As in *Employee Painters' Trust*, Defendant was "*not* in default for failure to appear" because, "[b]y the time the amended complaint was filed, [he] had participated actively in the litigation, filing an answer to the original complaint" and filing a status report in response to the Court's March 13, 2019 Order. *See* 480 F.3d at 999 (emphasis in original). Consequently, despite the addition of new Plaintiffs, service of the First Amended Complaint pursuant to Rule 5 was proper and "was complete when [P]laintiffs sent it via first class mail." *See id.* at 1000 (citing Fed. R. Civ. P. 5(b)(2)(B)).

### 2. *Personal Jurisdiction*

"A court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations." *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1135 (S.D. Cal. 2018). "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).

There are three traditional bases for personal jurisdiction over a resident defendant: physical presence, domicile, and consent. *Patterson v. Latimer Levay Jurasek LLC*, No. 09CV0567-IEG-POR, 2009 WL 1862427, at *1 (S.D. Cal. June 29, 2009) (citing *Burnham v. Super. Ct.*, 495 U.S. 604 (1990)). Further, "the personal jurisdiction requirement is a waivable right," *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005); accordingly, "[a] general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *as amended*, 807 F.2d 1514 (1987)

/ / /

(citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982); Fed. R. Civ. P. 12(h)(1)).

Even if Plaintiff were not subject to the Court's jurisdiction by virtue of being domiciled in this forum, *see, e.g.*, *Geffe v. Credit Investigation & Arbitration*, No. 08-CV-770 JLS (BLM), 2009 WL 10671675, at *1 (S.D. Cal. Sept. 1, 2009); *see also* ECF No. 83 ¶ 3 ("Defendant was at the time and still is a citizen of San Diego."), Defendant nonetheless has consented to the Court's personal jurisdiction by filing an answer to Plaintiffs' initial complaint that failed to dispute the Court's personal jurisdiction. *See generally* ECF No. 83; *see also, e.g.*, *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1047 (N.D. Cal. 2010). The Court therefore concludes that it has personal jurisdiction over Defendant.

## II. Entry of Default Judgment

Having determined it has jurisdiction, the Court now turns to the merits of Plaintiffs' Motion, addressing each of the *Eitel* factors in turn.

### A. Factor 1: Possibility of Prejudice to Plaintiffs

The first factor weighs in favor of entering default judgment here. Plaintiffs state a valid claim for defamation and defamation per se against Defendant, *see infra* Section II.B, and Defendant largely has failed to appear or otherwise participate in this action. Plaintiff, therefore, has suffered—and continues to suffer—injury from Defendant's ongoing defamation. Without a default judgment, Plaintiffs lack any other recourse to recover damages, which constitutes prejudice that favors default judgment. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (noting that "[i]f Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery" and will suffer prejudice); *see also Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2012) ("[A plaintiff] will generally be prejudiced if a court declines to grant default judgment where, as here, it lacks other recourse to recover damages for its injury or means to prevent [the defendant] from causing it further harm.").

/ / /

### B. Factors 2 and 3: Merits of the Claims and Sufficiency of the Complaint

To warrant entering a default judgment, the complaint's allegations must be sufficient to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this standard when the claims "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A default concedes the truth of the allegations in the complaint, except those relating to damages. *TeleVideo*, 826 F.2d at 917–18 (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *Taylor Made*, 175 F.R.D. at 661 (noting that, "[i]n assessing liability, the complaint's allegations are taken as true" because "a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact").

Plaintiffs bring claims for defamation and defamation per se, business disparagement/trade libel, tortious interference with prospective business relations, and intentional infliction of emotional distress. The Court analyzes the sufficiency of each of Plaintiffs' claims in turn.

#### 1. Defamation and Defamation Per Se

"To state a claim for defamation under New York Law,[1] the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citations omitted). Statements falling into any of the four following categories constitute defamation per se of an individual plaintiff and therefore do not require proof of damages: "(1) statements charging the plaintiff with a serious crime; (2) statements that tend to injure the plaintiff in her trade, business or profession; (3) statements that impute to the plaintiff a 'loathsome

---

[1] Although this action was transferred to this District from New York, the Court continues to apply New York substantive law. *See, e.g.*, *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000) (citing *Ferens v. John Deere Co.,* 494 U.S. 516, 524–25 (1990); *Van Dusen v. Barrack,* 376 U.S. 612, 636–37 (1964)).

19-CV-461 JLS (AHG)

disease'; and (4) statements that impute unchastity to a woman." *Nolan v. New York*, 158 A.D.3d 186, 195 (N.Y. App. Div. 2018) (citations omitted). "Likewise, with regard to business entities, 'statements which impugn the basic integrity, creditworthiness, or competence of the business, are defamatory *per se,* and thus, special damages need not be pleaded.'" *Prince v. Fox Television Stations, Inc.*, 33 Misc. 3d 1225(A), 939 N.Y.S.2d 743 (Sup. Ct. 2011) (quoting *Ruder & Finn Inc. v. Seaboard Surety Co.*, 439 N.Y.S.2d 858, 862 (1981)) (citing *Drug Research Corp. v. Curtis Publ'g Co.*, 199 N.Y.S.2d 33, 37 (1960)), *aff'd in relevant part as modified*, 93 A.D.3d 614 (2012).

If the plaintiff is a public figure, she also must prove actual malice, *i.e.*, that the defendant acted "with knowledge that the statement was 'false or with reckless disregard of whether it was false or not.'" *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013) (quotation omitted). "This includes when a defendant acts 'with a high degree of awareness of [the statement's] probable falsity or [if the defendant] entertained serious doubts as to the truth of his publication.'" *Id.* (quotation omitted). According to the United States Supreme Court, "[a]bsent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974). Rather, the court must look "to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Id.* For a plaintiff to be classified as a limited purpose public figure, a defendant must show that the plaintiff has:

> (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136–37 (2d Cir. 1984).

/ / /

The Honorable D'Agostino granted default judgment against Defendant as to Plaintiffs' claims for defamation and defamation per se in their original complaint, concluding that "the complaint plausibly allege[d] that Defendant repeatedly made false statements about . . . Plaintiffs [Weistman and Upstate Shredding], that were published through Defendant's various social media accounts, that the publication of these statements amounted to at least negligent conduct, and that the alleged false statements constitute[d] defamation *per se*" because they "clearly constitute[d] 'statements charging the plaintiff with a serious crime.'" *See* ECF No. 34 at 7 (emphasis in original) (quoting *Nolan*, 158 A.D.3d at 195). Judge D'Agostino also found that "the complaint plausibly allege[d] special damages in that Plaintiffs ha[d] alleged that Defendant's conduct ha[d] caused loss in revenues, business goodwill, and future business prospects," *id.* at 8 (citing *Sharratt v. Hickey*, 20 A.D.3d 734, 735 (N.Y. App. Dic. 2005)), and that, "even assuming that Plaintiff Weitsman [wa]s a public figure, the complaint ma[de] clear that Defendant's conduct satisfied the malice standard in that Defendant's statements [had been] made with reckless disregard of whether they were false or not." *Id.* (citing *Dongguk Univ.*, 734 F.3d at 123).

The Court similarly concludes that Plaintiffs' allegations in their First Amended Complaint adequately allege claims for defamation and defamation per se and therefore merit entry of default judgment in their favor. As before, "the [First Amended C]omplaint plausibly alleges that Defendant repeatedly made false statements about . . . Plaintiffs [Weistman and Upstate Shredding], that were published through Defendant's various social media accounts, that the publication of these statements amounted to at least negligent conduct, and that the alleged false statement constitute defamation *per se*" because they "clearly constitute 'statements charging the plaintiff with a serious crime.'" *See* ECF No. 34 at 7 (emphasis in original) (quoting *Nolan*, 158 A.D.3d at 195).

As for Plaintiffs Weitsman Shredding and Weitsman Recycling, neither appeared as Plaintiffs in this action until the First Amended Complaint was filed on May 9, 2019, *compare* ECF No. 1, *with* ECF No. 85; accordingly, Judge D'Agostino did not address the sufficiency of Plaintiffs' allegations as to those particular Plaintiffs in her April 25, 2018

Order. Nonetheless, the Court concludes that Plaintiffs also adequately have alleged defamation and defamation per se as to these new Plaintiffs, which therefore are entitled to default judgment in their favor.

"[P]laintiffs in defamation proceedings bear the burden of demonstrating that the libel designates the plaintiff in such a way as to let those who knew her understand that she was the person meant." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). Although "an allegedly defamatory statement . . . directed at a company . . . does not implicate the company's . . . affiliated enterprises," *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 132 A.D.3d 82, 88 (N.Y. App. Div. 2015) (citing *Kirch*, 449 F.3d at 390), *aff'd*, 28 N.Y.3d 82 (2016), a statement may nonetheless "be 'of and concerning' the plaintiff even though on its face it was aimed at another person or entity" where "the statement, though not naming the plaintiff, could have been understood by a reasonable reader as being, in substance, actually *about* him or her." *Kirch*, 449 F.3d at 399 (emphasis in original). In other words, "[i]t is not necessary that the[ plaintiff] be named in the publication, if the allusion is apparent." *Giaimo v. Literary Guild*, 434 N.Y.S.2d 419, 419 (1981).

Although Plaintiffs do not identify—and the Court has not located in the submitted exhibits—any false statements that Defendant made directly about Weitsman Shredding and Weitsman Recycling, Plaintiffs claim that, "because 'Upstate Shredding' has become a well-established brand in the recycling industry, people often refer to 'Upstate Shredding' when discussing any of Weitsman's business entities, including Weitsman Shredding and Weitsman Recycling." FAC ¶ 10. Based on these allegations, which the Court accepts as true given Defendant's default, *see TeleVideo*, 826 F.2d at 917–18, people in Plaintiffs' community likely understood Defendant's false statements about Plaintiff Upstate Shredding to refer to Mr. Weitsman's other business entities, Plaintiffs Weitsman Shredding and Weitsman Recycling. Further, Weitsman Shredding and Weitsman Recycling share Mr. Weitsman's name, such that readers of the defamatory statements concerning Mr. Weitsman may have imputed the defamatory statements to his eponymous

15

business entities. *See, e.g.*, *Prince*, 33 Misc. 3d 1225(A), at *7 (denying dismissal of defamation claim where "a reasonable viewer could have understood that the Report [about D'Lites Emporium] referred to [D'Lites LAMD] so as to infer that its advertising of D'Lites ice cream was also misleading to consumers" because "D'Lites LAMD and D'Lites Emporium share a common name, D'Lites, which was generally referred to in the alleged defamatory statements"); *see also Golden Bear Distrib. Sys. of Texas, Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 948 (5th Cir. 1983) ("Although a literal reader might have realized that the article did not state that Golden Bear of Texas had not been investigated by law enforcement authorities and was not in any way implicated in the fraud perpetrated by Golden Bear of California, we think that an ordinary reader could infer from the article that Golden Bear of Texas engaged in illegal actions much like Golden Bear of California."). Accordingly, the Court **GRANTS** Plaintiffs' Motion as to their first cause of action for defamation and defamation per se.

### 2. *Business Disparagement/Trade Libel*

"Under New York law, '[t]rade libel or product disparagement is an action to recover for words or conduct which tend to disparage or negatively reflect upon the condition, value or quality of a product or property.'" *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016) (quoting *Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989)). "Like defamation, trade libel is based on an injurious falsehood published to a third party." *Id.* (citing *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670 (1981)). "However, whereas defamation (in the commercial context) entails a statement that 'impugns the basic integrity or creditworthiness of a business,' trade libel is based on statements 'confined to denigrating the quality of a business' services [or products].'" *Id.* (quotation omitted). To state a claim for trade libel, a plaintiff must adequately plead "'(1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) . . . special damages.'" *Id.* (quotation omitted).

/ / /

The Honorable D'Agostino previously denied Plaintiffs' motion for default and *sua sponte* dismissed their claims for business disparagement/trade libel on the grounds that "Plaintiffs have failed to allege that Defendant made any statements denigrating the quality of the business' services or products" and "the claim is duplicative of Plaintiffs' defamation claims insofar as the facts underlying this claim are duplicative of the facts supporting the defamation claim." *See* ECF No. 34 at 9 (citing *Hengjun Chao v. Mount Sinai Hosp.*, 476 Fed. App'x 892, 895 (2d Cir. 2012); *Enigma Software*, 194 F. Supp. 3d at 291). Plaintiffs have failed to cure these defects in their First Amended Complaint. *See generally* FAC; *see also id.* ¶¶ 43–52. For example, rather than add allegations that Defendant made any statements denigrating the quality of Plaintiffs' services or products, Plaintiffs allege that "[Defendant] has disparaged the value of [Plaintiffs] by associating Weitsman with using Upstate Shredding to dispose of a body and criminal conduct, thereby impeaching [Plaintiffs'] business methods and Weitsman's integrity." *See id.* ¶ 44. These allegations only serve to highlight that Plaintiffs' second claim for trade libel is duplicative of their first claim for defamation and defamation per se. Accordingly, the Court **DENIES** Plaintiffs' Motion as to their second cause of action for business disparagement/trade libel, which the Court also **DISMISSES**.

### 3. Tortious Interference with Prospective Business Relations

"To state a claim for tortious interference with prospective economic advantage under New York law, a plaintiff must show (1) business relations with a third party; (2) defendants' interference with those business relations; (3) that defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012) (citation omitted). "The defendant's interference must be direct: the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *Kolchinsky v. Moody's Corp.*, No. 10 Civ. 6840, 2012 WL 639162, at *6 (S.D.N.Y. Feb. 28, 2012) (quoting *B & M Linen, Corp. v. Kannegeisser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010)). "[A]s a general

rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004).

The Honorable D'Agostino denied Plaintiffs' prior motion for default judgment as to their tortious interference claim on the grounds that Plaintiffs had "failed to allege which, if any, of [their] business relationships were harmed by Defendant's behavior" and that the claim was "duplicative of Plaintiffs' defamation claim." *See* ECF No. 10–11 (citing *Hengjun Chao*, 476 Fed. App'x at 895; *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 726 (S.D.N.Y. 2014); *Kolchinsky*, 2012 WL 639162, at *6). Again, Plaintiffs' First Amended Complaint has failed to remedy these deficiencies. *See generally* FAC; *see also id.* ¶¶ 53–62. For example, Plaintiffs allege that "[Defendant] intentionally and/or purposefully interfered with Plaintiffs' existing and prospective relationships by unlawfully publishing the False Statements so as to interfere with Plaintiffs' existing and/or prospective business relationships," *see id.* ¶ 57, without elaborating as to any specific business relationships that were harmed. Accordingly, the Court **DENIES** Plaintiffs' Motion as to their third cause of action for tortious interference with prospective business relations, which the Court also **DISMISSES**.

### 4. Intentional Infliction of Emotional Distress

Under New York law, "'[t]he elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress.'" *Brunache v. MV Transp., Inc.*, 151 A.D.3d 1011, 1014 (N.Y. App. Div. 2017) (quoting *Klein v. Metro. Child Servs., Inc.*, 100 A.D.3d 708, 710 (N.Y. App. Dib. 2012)).

As with Plaintiffs' second and third causes of action, the Honorable D'Agostino denied Plaintiffs' prior motion for default judgment and dismissed Plaintiffs' fourth cause of action as "duplicative of the defamation claim." *See* ECF No. 34 at 11–12 (citing *Franco*

*v. Diaz*, 51 F. Supp. 3d 235, 243–44 (E.D.N.Y. 2014); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 608 (E.D.N.Y. 2011); *Leonard v. Reinhardt*, 20 A.D.3d 510, 510 (N.Y. App. Div. 2005); *Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*, 146 A.D.2d 1, 7 (N.Y. App. Div. 1989); *Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 262 (N.Y. App. Div. 1995)). Because this Court must reach the same conclusion in light of the precedent cited by the Honorable D'Agostino, the Court **DENIES** Plaintiffs' Motion as to their fourth cause of action for intentional infliction of emotional distress, which the Court also **DISMISSES**.

### C.     *Factor 4: Sum of Money at Stake*

Under this factor, the Court considers whether the damages sought are proportional to the alleged harm. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). Plaintiffs have not briefed the issue of damages, instead indicating their intent to supplement this Motion to address their damages following the issuance of this Order. *See* Mot. at 11. At this juncture, Plaintiffs seek only a permanent injunction. *See, e.g.*, *id.* at 13–16. This factor therefore favors granting default judgment. *See, e.g.*, *PepsiCo*, 238 F. Supp. 2d at 1177 (concluding that fourth *Eitel* factor favored granting default judgment where the plaintiffs sought only a permanent injunction and not monetary damages).

### D.     *Factor 5: Possibility of Factual Dispute*

This factor turns on the degree of possibility that a dispute concerning material facts exists or may later arise. *Eitel*, 782 F.2d at 1471–72. Here, Plaintiff's allegations must be taken as true because of the default, *see TeleVideo*, 826 F.2d at 917–18, and therefore any purported factual dispute appears settled as Defendant failed to respond to the First Amended Complaint or to oppose Plaintiffs' Motion. Accordingly, this factor favors default.

### E.     *Factor 6: Reason for Default*

If a defendant's default may have been the product of excusable neglect, this factor weighs against granting default judgment. *Eitel*, 782 F.2d at 1471–72. Here, there is no evidence of excusable neglect; indeed, the Honorable D'Agostino previously found that

"Defendant not only knew of the ongoing action against him, but ridiculed Plaintiffs' legal efforts online while deliberately evading service by fleeing in his car when approached by process servers." ECF No. 34 at 5 (citing ECF Nos. 1-4 at 3, 9 at 2, 28-1 at 3). Thus, this factor weighs in favor of default judgment.

### F. Factor 7: Policy Favoring Merits Decisions

Although this factor, by its nature, generally weighs against default judgment because it encourages merits decisions, "[t]he fact that Rule 55(b) has been enacted . . . indicates that 'this preference, standing alone, is not dispositive.'" *Landstar Ranger*, 725 F. Supp. 2d at 922 (citing *Pepsico*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. 94-2684, 1996 WL 75314, at *3 (N.D. Cal. 1996))). In the present case, there is no indication that a merits decision is practicable—Defendant failed to answer Plaintiffs' original complaint until this action was transferred to this District and has yet to answer Plaintiffs' First Amended Complaint or respond to the instant Motion. *See PepsiCo*, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible."). The Court therefore concludes that the timely administration of justice outweighs the strong preference for merits decisions in this case.

Based on the above, the Court finds that all of the *Eitel* factors weigh in favor of default judgment as to Plaintiffs' first claim for defamation and defamation per se. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion. Specifically, the Court **GRANTS** Plaintiffs' Motion as to their defamation and defamation per se claims but **DENIES** the Motion as to Plaintiffs' remaining claims, which the Court **DISMISSES**.

### III. Relief Sought

At this stage, Plaintiffs seek only a permanent "injunction prohibiting Defendant from publishing any more False Statements and compelling him to remove all existing False Statements." Mot. at 13 (citing FAC at Prayer ¶ A). But Plaintiffs also seek general,

/ / /

special, and punitive damages, *see* FAC at Prayer ¶¶ C–E, which they anticipate briefing in a subsequent motion. *See* Mot. at 1, 9–10, 11, 17.

Under New York law, "a plaintiff seeking a permanent injunction must . . . demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Granite Music Corp. v. Ctr. St. Smoke House, Inc.*, 786 F. Supp. 2d 716, 729 (W.D.N.Y. 2011) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)); *accord Kaupp v. Church*, No. 10 Civ. 7559(JFK), 2011 WL 4357492, at *4 (S.D.N.Y. Sept. 19, 2011) (citing *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010)). "[A]bsent extraordinary circumstances, injunctions should not ordinarily issue in defamation cases . . . because ordinarily libels may be remedied by damages." *Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001) (citing *Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963)).[2] Further, injunctive relief in defamation cases is disfavored because a permanent injunction constitutes a prior restraint on expression, raising a "heavy presumption" of infringing the defendant's rights under the First Amendment. *See id.* at 176–77. The granting of a mandatory injunction, as Plaintiffs seek here, is also "an extraordinary and drastic remedy." *Rombom v. Weberman*, No. 1378/00, 2002 WL 1461890, at *12–13 (N.Y. Sup. Ct. June 13, 2002) (citing *Times Square Stores Corp. v. Bernice Realty Co.*, 107 A.D.2d 677, 682 (1985)), *aff'd*, 766 N.Y.S.2d 88 (2003).

/ / /

---

[2] The same is true under California law: "Injunctions against any speech, even libel, constitute prior restraints . . . [, which] are 'presumptively unconstitutional,' and a 'heavy burden of justification rests on anyone seeking a prior restraint on the right of free speech.'" *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1089 (C.D. Cal. 2012) (quoting *Balboa Island Vill. Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1165 (2007) (Kennard, J., concurring and dissenting)) (citing Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157, 163 (2007)).

Despite the fact that they seek damages, Plaintiffs contend that, "[w]ithout an injunction, Plaintiffs will continue to suffer irreparable harm that monetary damages cannot remedy" because, "[s]o long as the False Statements continue to be made and existing False Statements remain online, Weitsman, his family, and his companies will continue to be defamed, tormented[,] and threatened." Mot. at 15. Further, Plaintiffs urge that they do not "have an adequate remedy for countless lost business opportunities and customers, as the true extent of the loss may never be known." *Id.* Plaintiffs argue that "[t]he public interest also weighs in favor of [the] proposed injunction" because "[c]yber-bullying and harassment have become a serious problem, and there is a line where the need to halt a senseless, vicious online campaign of defamation is paramount to the First Amendment." *Id.* (footnote omitted).

Because Plaintiffs have not yet sought to quantify their damages, the Court cannot conclude on the current record that those damages will not provide an adequate remedy at law or that the harm Plaintiff has suffered is irreparable. *See, e.g.*, *Sang v. Hai*, 951 F. Supp. 2d 504, 531 (S.D.N.Y. 2013) (dismissing request for permanent injunction where the defendant made statements on his blog, during a press conference, and in an interview about the plaintiff's involvement in bestiality, criminal activity, etc., because the plaintiff had not adequately pleaded that she had suffered an irreparable injury for which no other remedy at law would provide adequate compensation). The Court also harbors concerns regarding the issuance of a permanent injunction given the strong presumption against its constitutionality. *See Metro. Opera Ass'n*, 239 F.3d at 177; *see also Bihari v. Gross*, 119 F. Supp. 2d 309, 325–26 (S.D.N.Y. 2000) ("The [defamatory] websites concern the business practices and alleged fraud of a well-known interior designer. Such speech is 'arguably within the sphere of legitimate public concern,' which imbues the speech with a heavy presumption of constitutional protection."). Having closely examined all relevant factors, the Court therefore concludes that Plaintiffs have not yet met their burden of demonstrating entitlement to permanent injunctive relief. *See, e.g.*, *Bynog v. SL Green Realty Corp.*, No. 05 CIV.0305 WHP, 2005 WL 3497821, at *4 (S.D.N.Y. Dec. 22, 2005)

(denying preliminary injunction in defamation case "because of the strong presumption against the prior restraint of expression . . . and Defendants' failure to demonstrate irreparable harm").  The Court therefore **DENIES WITHOUT PREJUDICE** Plaintiffs' request for permanent injunctive relief.

## CONCLUSION

In light of the foregoing, the Court **DENIES AS MOOT** Plaintiffs' Request for an in-person status conference (ECF No. 96)[3] and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion (ECF Nos. 89, 95).  Specifically, the Court **GRANTS** Plaintiffs' Motion as to Plaintiffs' claims for defamation and defamation per se but **DENIES** Plaintiffs' Motion as to their claims for business disparagement/trade libel, tortious interference with prospective business relations, and intentional infliction of emotional distress, which claims the Court **DISMISSES**.  Because Plaintiffs claim damages, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' request for permanent injunctive relief and **SETS** a hearing on Plaintiffs' supplemental motion for April 30, 2020 at 1:30 p.m. in Courtroom 4D.  Plaintiffs **SHALL FILE** their supplemental motion on or before February 27, 2020, Defendant **SHALL FILE** his opposition on or before March 19, 2020, and Plaintiffs **MAY FILE** their reply, if any, on or before April 9, 2020.

**IT IS SO ORDERED.**

Dated:  February 14, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[3] The Court agrees with Plaintiffs that Defendant's escalating online harassment is concerning, *see* ECF No. 96 at 2; however, the issuance of a permanent injunction here is unlikely to dissuade Defendant from continuing to post defamatory statements, and the Court's Order can do nothing to address Plaintiffs' immediate concern—the expiration of the current temporary order of protection on February 20, 2020, and Defendant's threatened trip to Owego, New York.  *See* Supp. Johnson Decl. Ex. 3; *see also* 2d Supp. at 4 ("The totality of the circumstances, including, in particular, Defendant's recent threat, warrant immediate attention and the severest level of judicial consequences.").  These are issues that must be addressed by the Vestal Town and Broome County Courts.  *See* Supp. Johnson Decl. Exs. 3 & 4.